# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) 1:18-cv-00170-JDL<br>) |
| WAL-MART STORES, INC., et al., | )<br>) |
| Defendants. | ) |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

This case arises out of a request for a work-related accommodation made by a Walmart[1] employee. The Equal Employment Opportunity Commission ("EEOC") alleges that Walmart failed to provide the employee with a reasonable accommodation and subsequently terminated her because of her disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. § 12101, *et seq.* (West 2019). The parties have each filed motions for summary judgment.[2] For the reasons detailed below, I deny both motions.

## I. FACTUAL BACKGROUND

The following undisputed facts are drawn primarily from the parties' joint stipulation of facts (ECF No. 26-1), as well as the EEOC's and Walmart's separate statements of fact.

---

[1] Wal-Mart Stores, Inc., states that it changed its name to Walmart Inc. in March 2018. This order will refer to Walmart Inc. and its codefendant, Wal-Mart Stores East LP, collectively as "Walmart."

[2] The EEOC's motion requests partial summary judgment on liability and a trial on damages. ECF No. 27 at 2.

Veronica Resendez began working for Walmart in 1999 as a Cashier in Texas. In 2009, Resendez transferred to the Walmart store in Augusta, Maine, where she most recently worked as a Consumables Sales Associate. The parties stipulate that, "[a]t all relevant times, Resendez had a disability, as that term is defined under the ADA . . . ." ECF No. 26-1 ¶ 11. Beginning no later than January 2013, Resendez's disability[3] prevented her from performing the essential functions of her job as a Consumables Sales Associate. In mid-January, Walmart provided Resendez with an accommodation request form to complete. A little over a week later, Resendez returned the form and a medical questionnaire that had been completed by her medical provider to Walmart, requesting that Walmart accommodate her in her then-current position by not requiring her to climb ladders or get on her knees. After returning the completed accommodation request form, Resendez requested a medical leave of absence through April 30, which Walmart approved.

Walmart's Accommodation Service Center ("ASC") is the division of the company's Benefits Department that processes employees' accommodation requests. In a letter dated February 3, 2013, Walmart denied Resendez's request to be accommodated in her then-current position because the medical restrictions imposed by her doctor prevented her from performing several of the essential functions of her position: lifting 25 pounds and moving up and down a ladder. Instead, Walmart offered Resendez the alternative accommodation of reassignment to a different,

---

[3] On her accommodation request form, Resendez reported that her disability was stenosis of the spine and bone degeneration in the knee and spine.

vacant position. Walmart has a policy that governs reasonable accommodations for employees (the "Accommodation Policy"), including reassignment.

When a disabled employee is eligible for reassignment, the Accommodation Policy provides that the ASC will identify positions that constitute a lateral transfer or demotion for which the employee is qualified, and will then conduct searches for vacant positions that match that description within the employee's "home facility" for up to 90 days. ECF No. 26-3 at 2. The only positions at Walmart that constituted a lateral transfer or demotion, and which Resendez was qualified to perform with or without reasonable accommodation, were Fitting Room Associate and People Greeter (together, "suitable positions"). Walmart informed Resendez in its February 3, 2013, letter that the ASC had conducted an initial search for vacancies for suitable positions at Resendez's home store in Augusta but had not discovered any. Walmart also advised Resendez that the company would continue to actively search for suitable reassignment positions at the Augusta facility for up to 90 days.

During the 90-day period between February 4 and May 5, 2013, the ASC conducted weekly searches for vacant Fitting Room Associate and People Greeter positions at the Augusta store. Although Walmart did not search for positions at other nearby stores, during the 90-day search period two Fitting Room Associate positions were posted at the Waterville store.[4] The first was a temporary Fitting Room Associate position, which was posted on March 6, 2013. That position was filled

---

[4] The parties have stipulated that "[i]t would not have been an undue hardship, as that term is defined under the ADA, for Walmart to have made a single limited exception to the reassignment process in its Accommodation Policy in order to search for a vacant Fitting Room Associate position on a weekly basis from February 4, 2013, to May 5, 2013, at the Waterville store for Resendez." ECF No. 26-1 ¶ 30.

by an external applicant two weeks later. Then, on March 22, 2013, a full-time Fitting Room Associate position was posted at the Waterville store. An employee at the Waterville store who had requested a reasonable accommodation because of medical restrictions resulting from pregnancy was reassigned to that position.

Walmart's searches did not reveal any vacancies for Fitting Room Associate or People Greeter positions at the Augusta store. Therefore, at the end of the 90-day period, Walmart sent Resendez a letter dated May 8, 2013, explaining that the company had not identified any vacant, suitable positions to which Resendez could be reassigned as a reasonable accommodation. Walmart continued to allow Resendez to take an unpaid leave of absence for up to a year as a further accommodation and informed Resendez that she could apply for open positions at her store in Augusta and at other stores while she was on leave. While Resendez was on unpaid leave, she learned that an employee named Doreen planned to retire from her Fitting Room Associate position at the Augusta store and she approached the Augusta personnel coordinator to ask about Doreen's position. Resendez ultimately did not fill the position.[5]

On March 4, 2014, Resendez informed the personnel coordinator at the Augusta store that her medical restrictions had not changed and that she could not return to work in her prior position. In response, Walmart terminated Resendez's employment.

---

[5] The EEOC asserts that Walmart did not offer Doreen's Fitting Room Associate position to Resendez after Doreen retired, a fact which Walmart denies on the basis that the personnel coordinator "could not recall during her deposition whether or not she had made this offer to Resendez." ECF No. 36 at 9. Resendez testified during her deposition that she heard that Doreen's position was later filled by a different Walmart employee. ECF No. 26-13 at 167:12-168:12.

## II. LEGAL ANALYSIS

"Summary judgment is warranted if the record, construed in the light most flattering to the nonmovant, presents no genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law." *Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 80-81 (1st Cir. 2019) (quotation marks omitted). "In the lexicon of Rule 56, 'genuine' connotes that the evidence on the point is such that a reasonable jury, drawing favorable inferences, could resolve the fact in the manner urged by the nonmoving party, and 'material' connotes that a contested fact has the potential to alter the outcome of the suit under the governing law if the controversy over it is resolved satisfactorily to the nonmovant." *Blackie v. Maine*, 75 F.3d 716, 721 (1st Cir. 1996). When the parties have each filed motions for summary judgment, the "court must consider each motion separately, drawing inferences against each movant in turn." *Id.*

"The ADA prohibits employers from discriminating against a 'qualified individual'—defined as 'an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires'—on the basis of disability." *Audette v. Town of Plymouth, MA*, 858 F.3d 13, 20 (1st Cir. 2017) (quoting 42 U.S.C.A. § 12111(8)). Discrimination on the basis of disability includes "not making reasonable accommodations to the known physical or mental limitations" of an employee, unless the employer can demonstrate that the accommodation would impose an undue hardship. 42 U.S.C.A. § 12112(b)(5)(A). To prevail at the summary judgment stage, an employee claiming that an employer failed to reassign the employee as a

reasonable accommodation must present sufficient evidence to show: (1) that the employee was disabled under the ADA; (2) that the employee could perform the essential functions of the position she desired either with or without a reasonable accommodation; and (3) that the employer knew of the employee's disability, yet failed to reasonably accommodate it. *Audette*, 858 F.3d at 20-21. "Moreover, the employee must demonstrate that there is an actual vacant position" to which she could have transferred. *Id.* at 21.

Here, the parties agree that Resendez was disabled under the ADA and that she could perform the essential functions of the Fitting Room Associate job. The parties dispute whether there was an actual vacant position to which Resendez could have transferred and, relatedly, whether Walmart failed to reasonably accommodate her disability. I address each party's motion for summary judgment, beginning with the EEOC's motion, which was filed first in time.

**A.     EEOC's Motion for Summary Judgment**

The EEOC argues that it is entitled to partial summary judgment on liability because Walmart violated the ADA by failing to transfer Resendez to one of several vacancies at the Augusta, Waterville, and Rockland/Thomaston Walmart stores as a reasonable accommodation even though such a transfer would not have caused Walmart undue hardship. *See* ECF No. 28 at 3. To survive the EEOC's motion for summary judgment, Walmart must "set forth specific facts showing that there is a genuine issue for trial." *Thomas v. Harrington*, 909 F.3d 483, 490 (1st Cir. 2018). The EEOC argues that there exist no genuine disputes of material fact.

In Walmart's additional statement of material facts in opposition to the EEOC's motion, Walmart asserts that "[n]ear the time of the May 8th letter, either during the 90-day search period or soon after it ended," the store manager and personnel coordinator for the Augusta store met with Resendez in person and "offered her a full-time position in the Augusta Fitting Room," but Resendez rejected the offer because she did not like the required hours. ECF No. 36 at 22. The EEOC denies this fact, asserting that Walmart never offered Resendez any positions, and requests that the fact be stricken from Walmart's response under Local Rule 56. Rule 56(b) provides that, "[i]n the event the parties file a stipulated statement of material facts, such stipulated facts shall control and take precedence over any conflicting statement of fact filed by any party to the stipulation." D. Me. L.R. 56(b). The parties' joint stipulation of facts states that, during the "90-day period between February 4, 2013 and May 5, 2013, there were no Fitting Room Associate or People Greeter vacancies in the Augusta facility." ECF No. 26-1 ¶ 23. Thus, whether Walmart's asserted fact conflicts with the stipulated fact depends upon whether the purported job offer took place "during" or "soon after" the 90-day search period. Because it is unclear whether there is a conflict and, for reasons I will explain, this dispute of fact is both genuine and material, I deny the EEOC's request to strike Walmart's fact.

First, the dispute is genuine because a jury could resolve the fact in the manner urged by Walmart, the nonmoving party. To support its assertion, Walmart cites to the deposition testimony of the Augusta store manager and personnel coordinator, both of whom testified that the alleged conversation and job offer took place, though they differed in their recollections of when it took place relative to the 90-day search

7

period. *See* ECF No. 26-8 at 28:22-31:10; ECF No. 26-14 at 35:8-37:24. Second, the fact is material because if Walmart did offer Resendez the opportunity to transfer to a position for which she was qualified as a reasonable accommodation, and Resendez rejected the position, Walmart would not be liable under the ADA for failure to accommodate. *See* 29 C.F.R. § 1630.9(d) (West 2019) (a person is no longer a qualified individual under the ADA if she "rejects a reasonable accommodation, aid, service, opportunity or benefit that is necessary to enable the individual to perform the essential functions of the position held or desired"); *see also Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 104 (1st Cir. 2007) (employee cannot refuse a reasonable accommodation and then argue later that employer should have offered something different). Because Walmart has raised a genuine dispute as to a material fact, the EEOC is not entitled to partial summary judgment on liability.[6]

## B. Walmart's Motion for Summary Judgment

Walmart argues that it is entitled to summary judgment because it fulfilled its obligations under the ADA when the ASC performed its initial search for suitable vacancies at the Augusta store in early 2013, when Resendez was first offered the accommodation of reassignment, and did not discover any. ECF No. 29 at 1. At that point, Walmart asserts, it "could have simply notified Resendez of this fact and either terminated her employment" or placed her on unpaid leave indefinitely. *Id.* A plaintiff opposing summary judgment "bears 'the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe.'" *Miceli*, 914 F.3d at

---

[6] Walmart also requested that portions of the EEOC's Reply Statement of Material Facts be stricken for failure to comply with Local Rule 56(d). *See* ECF No. 48 at 1-4; D. Me. L.R. 56(d)-(e). Because none of the objected-to sections of the EEOC's Reply Statement of Material Facts are material to my analysis of the EEOC's motion for partial summary judgment, I deny the request to strike as moot.

81 (quoting *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003)). In doing so, "[t]he nonmovant must point to materials of evidentiary quality," *Irobe v. U.S. Dep't of Agric.*, 890 F.3d 371, 377 (1st Cir. 2018), and cannot rely on "mere allegations or denials" to sustain their burden. *Thomas*, 909 F.3d at 490.

The EEOC points to several vacancies at the Augusta, Waterville, and Rockland/Thomaston Walmart stores, which it argues Walmart should have reassigned Resendez to as a reasonable accommodation. Among these is a vacancy that the EEOC argues was created after an employee at the Augusta store, Doreen, retired from her Fitting Room Associate position in late 2013. Walmart responds that the EEOC has not demonstrated that a vacancy, as that term is defined under the ADA, existed after Doreen's retirement. For reasons I will explain, I conclude that the EEOC has met its burden of producing specific facts to generate a trialworthy issue regarding whether Walmart failed to reasonably accommodate Resendez by failing to offer her a Fitting Room Associate position at the Augusta store following Doreen's retirement.

There is no First Circuit authority delineating what constitutes a vacant position, but the Supreme Court has concluded that nothing in the ADA "suggests that Congress intended the word 'vacant' to have a specialized meaning." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 399 (2002). The Tenth Circuit has held that "positions within [a] company are 'vacant' for the purposes of the ADA when they would be available to similarly-situated nondisabled employees to apply for and obtain." *Duvall v. Georgia-Pac. Consumer Prod., L.P.*, 607 F.3d 1255, 1263 (10th Cir. 2010). Additionally, several courts of appeals and the District of Maine have

concluded that "[t]he term 'vacant position' not only includes positions that are presently vacant, but also those that the employer reasonably anticipates 'will become vacant in a short period of time.'" *Cravens v. Blue Cross & Blue Shield of Kan. City*, 214 F.3d 1011, 1019 n.5 (8th Cir. 2000) (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1187 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 314-17 (6th Cir. 2012)); *see also Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1175 (10th Cir. 1999) (same); *Rowe v. Aroostook Med. Ctr.*, No. 1:09-cv-182-DBH, 2010 WL 3283065, at *11 (D. Me. Aug. 17, 2010), *R. & R. adopted*, 2010 WL 3851607 (D. Me. Sept. 28, 2010) (same).

Both Resendez and the Augusta personnel coordinator testified during their depositions that an employee named Doreen retired from her position as a Fitting Room Associate at the Augusta store while Resendez was on unpaid leave, and that Resendez asked about filling the position. *See* ECF No. 26-13 at 156:5-157:2, 166:17-167:11; ECF No. 26-14 at 33:18-34:20, 35:10-25. Walmart first argues that no admissible evidence establishes that Doreen retired while Resendez was on leave because the Augusta personnel coordinator did not recall specifically when it occurred and answered "I believe so" when asked whether Doreen retired before Resendez's employment with Walmart terminated in March of 2014. ECF No. 44 at 7; *see also* ECF No. 26-14 at 35:12. Walmart relies on *Feliciano v. Rhode Island*, 160 F.3d 780, (1st Cir. 1998), in which the First Circuit rejected as inadmissible the plaintiff's deposition testimony, offered to show that a vacancy existed, "that she told someone that she heard by 'word of mouth' that some unknown receptionist was going to retire." *Id.* at 787.

Several facts distinguish this case from *Feliciano*, however. First, although Resendez did testify that she heard from other employees that Doreen was retiring, she also testified that she saw photos of Doreen's retirement party on Facebook, after which she inquired about the position. ECF No. 26-13 at 167:2-11. Second, Resendez's testimony is not the only evidence of the vacancy—the Augusta personnel coordinator also testified that Doreen retired and that, although she did not recall exactly when it happened, she believed it was before Resendez left Walmart in March 2014. ECF No. 26-14 at 34:1-2, 35:10-15. Walmart asserts that the Augusta personnel coordinator's testimony is not admissible because "[s]tatements made upon information and belief, as opposed to personal knowledge, are not entitled to weight in the summary judgment balance." *Cadle Co. v. Hayes*, 116 F.3d 957, 961 (1st Cir. 1997); ECF No. 44 at 7. But this elevates form over substance. In *Cadle*, the First Circuit was referring to a conclusory assertion made by the defendant which was unsupported by the evidence. 116 F.3d at 961. Here, in contrast, the Augusta personnel coordinator's statement about the timing of Doreen's retirement can reasonably be interpreted as her best recollection of a fact for which she would have had contemporaneous personal knowledge. Therefore, unlike in *Feliciano*, inadmissible hearsay is not the only evidence of the vacancy created by Doreen's retirement.

Walmart also raises the argument that, even if the evidence regarding Doreen's retirement is admissible, it is not sufficient to establish that a vacancy existed because the EEOC has not shown that Walmart posted a Fitting Room Associate position after Doreen retired or otherwise sought to fill the position.

Walmart contends that it could have chosen not to fill the position at all and cites to *Audette*, 858 F.3d at 21, for the proposition that evidence of a backlog of work does not establish the existence of a vacancy. But *Audette* is distinguishable. In that case, the First Circuit concluded that testimony that the employer was "several months behind" on data entry was insufficient to establish that there was a vacancy that the plaintiff could have filled. *Id.* Here, there was an existing job at the Augusta Walmart store that an employee planned to vacate and, as defined above, a "vacancy" encompasses positions that an employer reasonably anticipates will become vacant in the near future. *See Cravens*, 214 F.3d at 1019 n.5. Furthermore, when considering Walmart's motion I must draw reasonable inferences in favor of Resendez as the nonmoving party. Doing so leads to the conclusion that a vacancy existed when Doreen gave notice of her retirement because, at that point, Walmart could reasonably anticipate that the Fitting Room Associate position would become vacant in a short period of time.

Finally, Walmart argues that Resendez's reassignment to the Fitting Room Associate position in Augusta would not have been a reasonable accommodation as a matter of law because the position was not vacant or expected to become vacant when Resendez submitted her accommodation request in early 2013. But such a bright-line approach ignores the individualized assessment that is "essential" to disability claims. *García-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 647 (1st Cir. 2000) (quoting *School Bd. v. Arline*, 480 U.S. 273, 287 (1987)). After Walmart notified Resendez by letter in May 2013 that it had not identified any vacant positions to which she could be reassigned, Walmart allowed Resendez "to take an unpaid leave

for up to a one-year period as a further accommodation, during which time Resendez could apply for open positions." ECF No. 26-1 ¶ 25. Because "[t]he duty to provide reasonable accommodation is a continuing one . . . and not exhausted by one effort[,]" a jury could reasonably conclude that the ADA required Walmart to reassign Resendez to a vacancy that occurred while she was on leave. *Ralph v. Lucent Techs., Inc.*, 135 F.3d 166, 172 (1st Cir. 1998); *cf. Criado v. IBM Corp.*, 145 F.3d 437, 444-45 (1st Cir. 1998) (allowing a disabled employee to take a leave of absence "does not absolve an employer's duty to accommodate").

For the foregoing reasons, I conclude that the EEOC has produced specific facts "sufficient to deflect the swing of the summary judgment scythe." *Miceli*, 914 F.3d at 81. Walmart is, therefore, not entitled to summary judgment.

### III. CONCLUSION

For the reasons set forth above, it is **ORDERED** that the EEOC's Motion for Partial Summary Judgment on Liability (ECF No. 27) and Walmart's Motion for Summary Judgment (ECF No. 29) are both **DENIED**.

**SO ORDERED.**

**Dated this 13th day of August, 2019.**

                                           /s/ JON D. LEVY
                                      **CHIEF U.S. DISTRICT JUDGE**